UNITED STATES DISTRICT COURT
THE SOUTHERN DISTRICT OF NEW YORK (White Plains)
------------------------------------------------------------x
DONALD P. ROSENDALE                      : 19-cv-9263 (NSR)
                                         :
          Plaintiff                      :
V.                                       :
                                         :
MR. COOPER GROUP INC.,                   :
NATIONSTAR MORTGAGE,                     :
NATIONSTAR MORTGAGE D/B/A/
CHAMPION MORTGAGE and                    :
MORTGAGE ASSETS MANAGEMENT LLC  :  Third  Amended and
                                    : Supplementary Complaint
                                    :  Jury Trial demanded
          Defendants                     :
------------------------------------------------------------x

DONALD P. ROSENDALE  complains  as follows:

1. This Third Amended Complaint is submitted    pursuant to the September

29, 2021  Order of the Hon. Nelson Roman.  Borrowing an automotive term, it is a

hybrid [1]:

---

[1]   Mr. Rosendale cannot find  a definition of a "railroad" complaint as used by Judge Roman in
the September order. To avoid risk that this complaint be defective as such, he has followed the
direction of FRCP § 8 to write a "(2) a short and plain statement of the claim showing that the
pleader is entitled to relief; and (3) a demand for the relief sought…"  To clarify "who did what,"
Mr. Rosendale alleges that the Nationstar servicing  arm was the direct culprit in his injuries,
and it do so at the direction of management from Mr. Cooper to benefit the parent company's
bottom line

(a)  In his September 21, 2021 Order, Judge Roman denied in part  a  motion to dismiss pursuant to FRCP 12 (b) (6) by the defendants Mr. Cooper Group Inc. and Nationstar Mortgage d/b/a Champion  of certain claims in the second amended complaint. Those surviving are repeated with no embellishment.

(b) He dismissed certain other causes of action without prejudice, and provided a primer on how their pleading errors might be fixed.  These are re-submitted if appropriate

(c)  In the more than two year since this action was filed, certain other actions transpired which injured the plaintiff and these are added.

(d) According  to trade publication reports, Mr. Champion/Nationstar completed the sale of what is described as its "reverse mortgage servicing portfolio" to Mortgage Assets Management, LLC ("MAM") on December 8, 2021. It is unclear whether the plaintiff's reverse mortgage and/or the liability for the injuries pled here are assumed by MAM, but to insure that this new player is fully advised of the allegations, and the likelihood that it might be a defendant [2]  it is named  and is being served with this Third Amended Complaint and a cause of action on violation of that rule is conditionally pleaded. The clerk is asked to provide a copy of the summons so this can be served on MAM.

_____

[2]  If the trade publications are correct, then more than 30 days have passed and MAM has not provided the disclosures required by 15 US 1641 (g)

(e) The New York laws on reverse mortgage loans was supplemented  in 2020, after the Second amended Complaint  was filed. In 3 NYCRR §12 it clarifies what Judge Roman has already found on different grounds, which is that Nationstar injured Mr. Rosendale by paying taxes from his line of credit when they were not actually due and without the 30-day cure provision.

## THE NATURE OF THE CASE

2.  Mr. Rosendale is a  retired corporate executive who will shortly mark his 86th birthday. Between September of 2018 and August of 2019, Nationstar/Champion withdrew $24,719 from his reverse mortgage line of credit to pay hazard insurance and  property taxes.  On two of those occasions, the charges had already been paid by Mr. Rosendale.  On the other two occasions, he was not in default on paying the taxes and Nationstar did not give him the advance notice and right to cure provided by the mortgage contract and New York law. In May of 2019, it told him it was  paying  a tax bill from his funds but didn't pay it  and consequently he incurred a penalty.

3.  During the  2018-2019 period, it bombarded him with  letters and phone calls making false  threats to foreclose on his home of four decades. Its letters replying to his Qualified Written Requests were accompanied by alarming forms listing counseling agencies he should consult because    he was in danger of losing his home.

4.  As a consequence Mr. Rosendale has recurring nightmares that a person from Nationstar has come to seize  home. He is under the care of a mental health professional who has diagnosed him as suffering from acute clinical depression resulting from Nationstar's unfounded threat to foreclosure on him together with its "stonewalling" and  untruthful responses to his requests that these threats be corrected/and or cease.

5.   Nationstar produced in September of 2019  a copy of his mortgage materially  different than the one he signed in 2009, dramatically expanding its lien beyond the house and five acres on which his loan was based.[3]  In response to Qualified Written Requests,   it  refused to give him receipts for taxes it said it paid, would not give him notices it said it had received from taxing authorities alleging unpaid funds, pled ignorance to a New York state requirement that is provide him a limited waiver of  its right to foreclose  and failed to advise him when his line of credit had been exhausted by a series of unexplained withdrawals.

6. Further, in 2018 it sent to the Consumer Financial Protection Board which  then  forwarded the file to Mr. Rosendale   a document he  never asked for and never seen previously seen  showing  it had charged and continues to charge him  interest in excess  of what he agreed  on his mortgage contract.

---

[3]  The "comparables" were all houses on 5 acres or less, which he was told at the time was the acreage limits for a HECM loan

7.  In around December of 2019 documentary evidence shows it  made what is known as a "Type22" claim  on   the MIP mortgage insurance from HUD receiving a payment of about $600,000 without the prior notice to Mr. Rosendale required by HUD Rule 4235.1 §.8.2.

8.  He alleges in this lawsuit that the actions  from the summer  of 2018 through August of 2019 in  taking   funds from his line of credit secured by the equity in his home without notifying him and giving him an opportunity to cure the violated his mortgage contract as well as  New York RPP 280 (a) and 3 NYCRR 79.9 [4]; that in charging him interest in excess of what he had agreed to pay  it likewise breached its contract; and that its  actions amounted to conversion,  that it failed to provide him a  necessary "Lender's Limited Waiver of the Right of Foreclosure" as required by 3 NYCRR 79.7;  that  in "stonewalling" him in answer to  multiple Qualified Written Questions and failing to timely correct its error,  it violated 12 USC 2605 (e) (1) (a); and  that constant false threats of "acceleration" and "foreclosure" were intended to coerce him into dropping his objections to Nationstar

 paying taxes when they were not due. Finally, because the mortgage now presented has a property description   different from the one he signed, with a notary's jurat added at some time after  he  signed, Nationstar asserts a lien on

---

[4]  And 3 NYCRR 79.12 to the extent it is retroactive.

lands he did intend to bind as well as not owning at the time he signed the

mortgage which should be stricken. This claim on property outside that pledged in

the mortgage violates 3 NYCRR 79.5 (c).

## JURISDICTION

9. This court has jurisdiction pursuant to 28 USC 1331 because it involves

statutes  of the United States. ( RESPA). Alternatively, this court has jurisdiction

under 28 USC 1332 because the plaintiff and all parties (including MAM) are

citizens of different states and the amount in controversy is more than $75,000.

Venue is correct because the plaintiff resides in  and the property in question is

located in this District. Pursuant to 28 USC §  1367, this court has jurisdiction

under  all other claims that are so related to claims in the action within such

original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

## PARTIES

10. The plaintiff, Donald P. Rosendale, resides in a single family home

which is his primary residence  at 4848 Route 44, Amenia, Dutchess County, New

York. Mr. Rosendale is a "consumer' as identified by New York law. His

mortgage loan is insured by the FHA.

11.  The defendant, Mr. Cooper Group Inc.  has a principal

office at 8950 Cypress Waters Blvd., Coppell, TX.

12. The defendant Nationstar Mortgage LLC is incorporated in Delaware and  has is principal office at  8950 Cypress Waters Blvd., Coppell, TX,  It is a subsidiary of The Mr. Cooper Group Inc. "Champion Mortgage" is a trade name under which Nationstar acts as a servicer of reverse mortgages. The appellations Nationstar and Champion are used interchangeably in this complaint to designate those parts of  Mr.  Cooper involved in mortgage servicing,

13.  According to published reports, the new owner of Mr. Rosendale's loan is Mortgage Assets Management, which  is located at 14405 S. Walter Rd., Suite 200, Austin, TX

## A   TUTORIAL ON REVERSE MORTGAGES,

14 As described by the FHA, "The Home Equity Conversion Mortgage" ("HECM")   program is FHA's reverse mortgage program that enables seniors who have equity in their homes to withdraw a portion of the accumulated equity. The intent of the Home Equity Conversion Mortgage program is to ease the financial burden on elderly homeowners facing increased health, housing, and subsistence costs at a time of reduced income." (Federal Register, 2017.)   Unlike conventional mortgages, the borrower does not pay monthly  interest payments, but interest accumulates until he  dies or sells the property. In the interim the mortgage provides an open line of credit which he access.

15.  In addition  to interest,  the borrower pays  a fee known as MIP. The MIP insurance guarantees that the lender can never lose money because of depreciation of the home and the borrower cannot be charged with a deficiency. In 2019, 2020 and 2021  , Mr. Rosendale each year  paid more than $3,000 in MIP insurance.

16. When the loan reaches 98% of the lending limit the lender  exercises what is called a "Type 22 Claim" to HUD, which from the MIP policy pays the lender the outstanding debt and assumes the mortgage, which HUD then holds ir under "Fannie Mae."

17.  On a conference call with investors held March 7, 2019  Mr. Cooper vice chairman and CFO Chris Marshall said that in that year Mr. Cooper intended to "shift from growth to profitability and deleveraging….".

18. It would was financially advantageous to Nationstar during this period to move loans off its balance sheet through "Type 22" claims to HUD. However, Nationstar could only exercise such claim if all of Mr. Rosendale's insurance and taxes were "current."

***The Dutchess County tax payment schedule***

19. The payment calendar is explained  by the Dutchess County  Finance Department at https://www.dutchessny.gov/Departments/Finance/Tax-Collector-Calendar.htm   .

8

20.  Mr. Rosendale's school taxes came due each year  in October.  He had two options: He could pay one half of the bill directly to the school district in October 1, or he could elect to pay his school and property taxes together with his county, town and fire district  taxes in March.  His school taxes under this payment schedule are  deferred and paid together  with the town tax rolls and he is not "in default."

21.  He can  pay  those combined  taxes with small penalties, up until May 31. If he does not pay them by June 1, they are transferred to the county tax rolls. There is no tax "lien" on his property until December 1 of each year. His taxes are "current" until declared in default  by the taxing authority.

[HUD letter 2018-08, October 22, 2018]

## THE FACTS

22. Mr. Rosendale took the loan  in June of 2009 with MetLife Bank, which sold its reverse mortgage business to Nationstar in April of 2012.  The Second Amended complaint alleged that Nationstar  then sold the mortgages  on all the properties in New York State  to  so-called HECM Trusts.

23. As described previously, in January of 2021, in response to an order from Judge Roman, Charles Jeanfrau, Esq., attorney for the defendants, submitted a letter identifying the owner as of that date as the Federal National  Mortgage Association ("FNMA") (Exhibit 1)  That merely reflected the subsequently explained  "cash-out" by Nationstar of its MIP insurance by  transferring the loan to HUD. In October of 2021, he sent an ambiguous e-mail which seems to say that Fannie Mae is the "investor" and Nationstar the "holder of record."

24.  At the   June 4, 2009  closing, counsel for MetLife  provided  an inaccurate property description which   described  parts of his land which were not intended to be secured by the loan; when Rosendale objected,  it was removed, and the mortgage was signed without a property description. His understanding of the loan is that it was secured only by his house and the 5 acres on which it is situated, as measured  by 5-acres "comparables"

25.  Exhibit 2  is the  "single copy"  of the mortgage  pursuant to  its Para. 18 he was given on June 4, 2009.   The authentic document indicates  that the property

description follows Page 10 (after the signature page at the end of the mortgage) but there are no following pages.

26. In September of 2019, in response to a Qualified Written Request, Nationstar sent him a copy of the mortgage containing the property description that had been removed in 2009. (Exhibit 3)  Illustrating that it was inserted into the mortgage at some point after Mr. Rosendale signed, the property description appears in the wrong page sequence, on Page 2, not at the end of the mortgage. The new mortgage is notarized by a Maria Greco, who was not present at the closing.

27.  The  result of this, is to encumber land which is in excess of the five acres pledged for his HECM loan in violation of 3 NYCRR 79.5 while at the same time also encumbering land which he did not at that time own.

28.  In September of 2012,  an assignment of mortgage from the original lender  MetLife to  Champion Mortgage Co., was recorded with the Dutchess County Clerk  It  is not accompanied by the property description  which normally accompanies a mortgage assignment

29. The mortgage states it is subject to Federal and New York law. It provides a 30-day cure period following notice if  Mr.  Rosendale does not pay his insurance premiums or his property taxes.

30.  In September  of 2018, after claiming that  Mr. Rosendale had not

paid his hazard insurance premium, Nationstar withdrew $2,789 from his line of credit to "slam" him into an expensive forced placed insurance policy.  Mr. Rosendale at all times had such coverage  and  his insurance carrier had timely contacted Nationstar in response to each notice.  Nationstar eventually  credited his account with  the  $2,789 it had taken from his line of credit.

31.   On January 23, 2010, Nationstar  sent Mr. Rosendale  a "15-day tax notice."  asserting that "failure to pay  your taxes prior to their delinquency date constitutes a default under the terms of your reverse mortgage." On January 24, 2019, it also sent him a "10-day notice."

32.  On February 11, 2019,  before the 30-day cure provisions of his mortgage expired,  Mr. Rosendale paid $7,226   and Nationstar has confirmed it received  a faxed proof of payment that day.

33. Nationstar on February 26, 2019 again withdrew  $7,265.95  from his line of credit secured by the equity in his home.  Apparently, this sum was intended to pay the $7,226  he'd paid two weeks earlier and the   Dutchess County Commissioner of Finance rejected it as already paid.

34. In mid-May of 2019, without any prior notice, Nationstar took $7,196 from his line of credit for "tax payments."  This   was   the tax Mr. Rosendale planned to pay the town for the   May 31, 2019 bill.  Champion left a message on his answering machine telling him  the taxes had been paid and so he  did not write

a check for his town taxes due in May. However,  because Nationstar *did not pay*

*Mr. Rosendale's May 31, 2019 tax bill,*  he   incurred  a $278 penalty.

35.  On September 2, 2019, Mr. Rosendale received a letter  dated August

23, 2019 from Champion   (Exhibit 4)  stating as follows:

> "We previously sent you notice that we have not received proof that your
> property taxes and/or property insurance…were current….Because we did
> not  receive proof that the property taxes and/or insurance were current, we
> were required to advance the funds to pay them on your behalf.…**The total
> amount that has been advanced  to date on your behalf is $0.00. You
> must take immediate action to resolve this matter or your loan may be
> declared 'Due & Payable.'** If your loan is declared 'Due and Payable' it
> could result in a foreclosure action on your home." [Bold face in original]

36.  Because <u>both</u> taxes and insurance were mentioned  in the August letter,

with no dollar amounts identified  he could not tell which  supposed shortage was

intended.  Mr. Rosendale immediately "faxed"  documents showing that his

insurance was paid and that the Dutchess county clerk's website did not indicate

as of that date any   taxes in default. These were sent to both  numbers identified on

the notice. (Exhibit 5) and thought he the matter had been resolved. But

unbeknownst to him, Nationstar had already taken another $7,473.60 from his line

of credit . [5]

---

[5]  Ms. Begum complained in a subsequent letter that the screen shot of the Dutchess county clerk
as of the date of Mr. Rosendale's letter "wasn't legible." In other phone messages and
correspondence, Ms. Begum stated incorrectly  that Mr. Rosendale "hadn't paid his taxes in two
years," that as such, Dutchess County was  about to foreclose on a lien on his home which
justified Nationstar's  actions.

37. In a letter  dated September 18, 2019  a Nationstar executive,  Kauser

Begum wrote Mr. Rosendale attempting to justify  after the fact why Nationstar

had removed funds from his line of credit without first notifying him:

> "On August 20, 2019, we conducted our property tax search and it was
> determined that the 2018 Dutchess County  taxes for the Independent School
> District...were delinquent $7,473.60. Therefore, on August 22, 2019 funds of
> $7,473.60 were advanced from the Line of Credit… A Property Charge
> Delinquency Notice dated August 23, 2019 was mailed to you….Please be
> advised that Champion mortgage was within our rights…"[Exhibit 6]

38. However, pursuant to RPTL 902 Mr. Rosendale's county  property taxes

would not become "delinquent" until December 1, 2019. His subsequent tax bills

would have had to contain a  notation  of such "delinquency"  (RPTL 981) which

they did not  and  as noted by HUD mortgagee  letter 2018-18 , taxes are "current"

until declared delinquent by the county, not by Ms. Begum. In any event,

Nationstar was again prohibited from withdrawing funds from his line of credit

without prior notification  until the 30-day right to cure had expired.

39. In short,  on August 22, 2019 Nationstar took $7,473.60 from Mr.

Rosendale's line of credit and only notified him it had done so after the fact, on

August 23, 2019.

40.  Because Mr. Rosendale was over 70 years of age at the time he

took the loan, it is governed by New York RPP 280 (a).  That rule is interpreted by

3 NYCRR 79, which holds in Para. 9 (i)  in effect at the time this action was filed:

"If the mortgagor(s) fails to pay taxes or maintain all required insurance, then the lender must within 10 business days of learning of such event, give written notice of such failure to the mortgagor(s) and the third-party, if any, designated by the mortgagor(s) to receive notice of any event that could lead to termination. The lender must give the mortgagor(s) 30 calendar days to cure such failure…."

41. The mortgage (Exhibit 2) gave Mr. Rosendale an identical 30 days to cure any defect In the payment of his taxes. That he had 30 days to "cure" any deficiency barred Nationstar's self-help of withdrawing funds from his credit line before he had the opportunity to pay the bill himself.

42. In researching RPP 280 (a) Mr. Rosendale noted that the statute seemed to require that Nationstar create an escrow account.

43. In order to find out whether that requirement applied to him, Mr. Rosendale sent an e-mail to the New York State Department of Financial Services (DFS) and on September 19, 2019 , a Qualified Written Request pursuant to 12USC 2605 to Nationstar.

44. On the evening of September 25, 2019, Mr. Rosendale received a telephone call from a Chandler Williams of Nationstar. Mr. Williams said he had been contacted directly by the DFS because the agency was concerned about the issues raised in Mr. Rosendale's correspondence with it. Mr. Williams conceded that Nationstar had acted improperly in taking funds from Mr. Rosendale's secured line of credit on three occasions without notifying him in advance, that Nationstar wished to "fix things."

45.  Subsequent to Mr. Williams's telephone call, Mr. Rosendale received four calls from Ms. Begum. He answered one call and the others were messages left on his answering machine where anyone could hear them. The essence of Ms. Begum's messages was that Nationstar had no record of Mr. Rosendale paying his taxes in 2018 and 2019, that he was "two years behind" and unless he produced them, Nationstar intended to accelerate his loan and foreclose.

46.  Mr. Rosendale then received in response to his QWR asking for an accounting of the trust an incomprehensible letter [Exhibit 7] dated September 21, 2019. It reads as follows: "**We have received your request to update the account with authorization of the Estate of the borrower(s). This letter is to inform you that your request has been denied.** The request has been denied due to Incomplete Documentation." [Bold face in original].

47. In December of 2019, Mr. Rosendale sent a QWR asking for a breakdown and receipt of taxes paid, In response, Nationstar simply reiterated that it has paid his school tax bill and did not provide receipts. It had not, however, paid his school bill. It simply ignored his requests in another QWR for the owner of his loan.

48. On October 3, 2019, Mr. Rosendale received a letter from Nationstar dated September 27, 2019 incorrectly alleging he did not have property insurance

and that Nationstar intended to buy forced placed insurance. On opening the notice in front of a USPS rural delivery postman, Mr. Rosendale broke into tears.

49. This fifth notice proves to be "déjà vu all over again." Mr. Rosendale has had hazard insurance at all times and his insurance company advised him that it

50. On had notified Nationstar, just as it did in 2018.January 29, 2020, shortly after Mr. Jeanfrau wrote that the Rosendale loan was then owned by Fannie Mae he received a "welcome letter" from Novad Management Consultants stating it had become servicer on behalf of HUD. (Exhibit 8) He wrote to that firm and asked an explanation (Exhibit 9) but on viewing that firm's website he determined that it is the agent for HUD when a lender has "cashed in" under Rule 22.

51. During February of 2020, he made telephone calls to the HUD hotline, to Novad and to the HUD public affairs office. His notes during that time indicate he was told that Nationstar had exercised its options to collect the MIP and as a consequence his loan was assigned to HUD which in turn assigned it to Fannie Mae. In January and February he did not receive monthly statements of his account and notices that the MIP insurance premium on his loan had been paid.

52. On March 3, 2020, he wrote to Champion (Exhibit 10):

"In January, I received a 'welcome letter' from a new servicer indicating that my loan had been sold to HUD and that it was the new servicer. Today I received a telephone call that Nationstar was still my loan servicer, Please advise me of the statute [sic] of my loan and who is the servicer."

53. He has never received an answer to that letter.

52. Coincidental with the "return," something strange began to happen with his line of credit. He had reduced this to under $100, to prevent Nationstar from invading it to pay taxes or insurance, but starting in around March of 2020, it began to "shrink" by small amounts every month. Technically, unless he took an additional loan (which he did not) his line of credit increases in lockstep with his debt, e.g., the difference between them remains constant.

53. On September 8, 2020, Mr. Rosendale wrote to Champion (Exhibit 11):

"Today I have received a statement claiming that my Available Line of Credit …is $54.77. The same form shows that my (previous) available line of credit was $63.10. Therefore my line of credit has decreased by $8.33 during a period in which there were no transfers. I would appreciate a prompt explanation for this."

54. By January of 2021, his credit line had been reduced to zero by these deductions,

55. On September 22, 2021, Mr. Jeanfrau wrote to a law firm evaluating this action: "Champion remains the holder of record. The loan is serviced by Nationstar Mortgage LLC d/b/a Champion Mortgage in accordance with Fannie Mae's guidelines for servicing reverse mortgages.. Fannie Mae is the 'investor' in the mortgage but as a matter of record the Mortgage remains in the name of Champion.

***Mr. Rosendale's declining mental health as a consequence***
***Of the threats to take his home and  RESPA Violations***

56. During this period, Mr. Rosendale was severely depressed and thought of "ending it all."  His principal doctor became concerned about his deteriorating mental health condition and referred him to  Stephen Waugh at Weill Cornell Hospital. Dr. Waugh  has diagnosed  him with extreme clinical depression as a result of the threats to lose his home and the uncertainty of knowing who owned his caused by the refusal of Champion in respond.. He is available for deposition and to testify at trial.

57. As told  to Dr. Waugh, Mr. Rosendale has  had  a   series of nightmares beginning around December of 2019 and continuing through the current date in which a figure representing Ms. Begum appears arrives to claim his home.   [6]

58.  In the first series of dreams, Ms. Begum appears at the foot of his bed. dressed in a hijab, with the veil  drawn back to reveal her face.  She is carrying a "pole ax." The figure says she has come from Nationstar to claim his home.

59. In another iteration, she is in contemporary dress, standing alongside Mr. Rosendale at his living room desk, and while he is crying and  says that he has

---

[6]  There is a woman from Dallas with the name Kausur Begum who is pictured on social media sites, and this is the face Mr. Rosendale sees in his nightmares.

nowhere to take important mementoes of his life, Ms. Begum  says Nationstar
doesn't care, he has to be out of his home "by Monday."

60.  On the days after these dreams ---about a dozen in all ---  Mr. Rosendale
has been unable to work, eat or go about his normal life.  He has lost almost 20
pounds because he has been too upset to eat.

## NATIONSTAR'S  INTEREST RATE OVERCHARGE

61. In October of 2019,  Mr. Rosendale received a  package of documents in
response to an inquiry he had made to the New York Department of Financial
Services.. The package included his Note and Mortgage,  withdrawal history…and
a letter he neither  asked for nor previously seen.  It is dated November 10, 2010,
some 18 months after the closing, advising him that the lender "had discovered a
clerical error in one of the documents [he] signed"   --- the mortgage Note. [Exhibit
13)

62. Mr. Rosendale's interest rate is calculated at a 2.75% premium over
LIBOR (London Interbank  Offered Rate)  "as made available in the 'Money
Rates' section of  the Wall Street Journal." (See Exhibit 2) That newspaper figure
only goes to the second digit to the right of the decimal point. [Exhibit 14]  The
"correction" letter  reads: "The interest rate will be based on ...the one Month
(LIBOR) rate as made available  in the 'Money Markets' section of the Wall Street
Journal rounded to three digits to the right of the decimal point." (Emphasis added)

20

63. Since 2010, Nationstar calculated  Mr. Rosendale's interest in the higher ("three digits after") interest rate instead of the two digits after the decimal point published in the WSJ. For example, on May 31, 2019 it says his interest rate was calculated from  "the current index value of 2.48**3**00%" and in April of 2019, the  "index value of 2.49**5**000%."  (Exhibit 00)

.**THE PROPERTY DESCRIPTION ISSUES**

64. In 2006, Mr. Rosendale had agreed to sell five acres of his land to Bernard Parker.  Part of the transaction involved giving Mr. Parker a right of way onto Dutchess Route 44.

65.  However , sometime in the early 20th Century, that highway   which previously had adjourned his property was moved  about 20 feet to the north, leaving a strip called the "abandoned road"  between Mr. Rosendale's property and the highway. The real estate agent involved in the Parker sale,  Steven J. Manning, discovered that while that sliver was *supposed to be* deeded to Mr. Rosendale, it had never been , and he had no road frontage,  while Mr. Parker's lawyer found that there was a lien from Nationstar  on the  property    barring  him from subdividing. Mr. Parker  sued Mr. Rosendale for breach of contract. (*Parker v. Rosendale*, Dutchess County Supreme Court, 3594-2006). That was settled by Mr. Rosendale paying Mr. Parker $4,000 in damages.

66.  In February of 2019, after Mr. Rosendale contacted the Dutchess County clerk and explained the problem, the Department of Transportation belatedly ceded the "abandoned road" to him.  Illustrating this, the mortgage is based on 100 acres. (Exhibit 2) Mr. Rosendale's 2019 tax bill [Exhibit 14] shows his property is  102.66  acres, the added parcel being the "abandoned  road."

67. At the 2009  closing, the lender presented property description which included the "abandoned road." He  refused to sign a loan  claiming ownership of property he knew he did not own. In addition,  New York law bars the lender from placing a lien on more than the 5 acres covered by a HECM loan.  [3 NYCRR 79.5] After the closing the property description was changed and a notarization added.

## AS AND FOR A FIRST CAUSE OF ACTION
### As Against Nationstar Violation of  RESPA -  12 USC 2605

68.  In the Second Amended Complaint Mr. Rosendale alleged that the repeated failures of Nationstar to adequately respond to what he termed "Qualified Written Requests" violated RESPA, § 2605 and that this pattern entitled him to damages in a private right of  action.

69. In analyzing whether Mr. Rosendale's various letters to Nationstar constituted *bona fide* qualified written requests under RESPA, Judge Roman found that at least five of them  (as of the time the Second Amended Complaint was filed) did so, writing:

"In sum, Plaintiff has plausibly alleged that Defendants failed to timely acknowledge his September 2, 2019, September 19, 2019, and October 8, 2019 QWRs and he has plausibly alleged that Defendants failed to adequately respond to his September 19, 2019 and October 8, 2019 QWRs."

70. In addition to these, Judge Roman said Mr. Rosendale could  in a Third Amended complaint cite a letter he had sent to Nationstar on March 3, 2020 (Exhibit 10 above) asking who owned his mortgage in light of conflicting messages he had received. This is clearly a "request for information" and a valid QWR.

71.    Despite this,  Judge Roman, however, said Mr. Rosendale did not adequately plead direct damages nor  did he demonstrate a "practice or pattern of non-compliance" pursuant to   § 2605(f)(1)(B) allowing Mr. Rosendale to collect statutory damages in a private right of action.  He said that the plaintiff had not shown a "direct connect" between his clinical  depression and Nationstar's runaround.

72. The Second Amended complaint was written before Mr. Rosendale's doctors became so worried his declining mental state and urged him to see a mental health professional, who has determined that his clinical depression stems not just from the potential loss of his home, but Nationstar's consistent pattern of untruths, dissembling and ignoring Mr. Rosendale's.

73. Certain of Mr. Rosendale's letters, such as the September 25, 2020 letter he wrote to Kauser Begum, were in response to inaccurate answers  to his initial

QWR and a demand she correct the errors. As such, his time, printing and postage from that and other responses are damages. [7]

74  In regards to whether or not Mr. Rosendale has demonstrated a "pattern or practice" of concealment, It is clear that Nationstar did not want Mr. Rosendale to know that it had "cashed in" his loan and collected what appears to be a $600,000 payout:

(a) Mr. Jeanfrau's letter, in response to a court order, in 2021 merely says FNMA now owns the loan without explaining the Rule 52 cash-out. It leaves  the impression that this merely reflects the back-up note Mr. Rosendale signed with HUD.

(b)  It did not notify Mr. Rosendale in advance of cashing in the loan to HUD as required by  agency regulation.

(c)  It completely ignored Mr. Rosendale's QWR in March of 2021 as to who owns his note.

(d). Mr. Jeanfrau's e-mail to the law firm of September 22, 2021, if diagramed  by a high school English teacher, says "Nationstar is servicing the loan for HUD."

---

[7]  *Miranda v. Ocwen,* 148 F. Supp. 3rd 1349 (2020)  *Miranda v. Ocwen,* 148 F. Supp., 3rd 1349 (S,D, Fla (2020)).

(e)  In December of 2021, Mr. Rosendale sent a series of discovery requests to Nationstar, These were a double-edged sword; they could confirm Mr. Rosendale's allegations or in turn  Nationstar could use them  to diffuse the allegations. . The responses were due on January 11, 2022. On January 21, 2022 to state that his client had not approved its answers.

76. Mr. Rosendale believes that taken in this context, Nationstar's failure to answer the QWR concerning  the ownership of his loan  is a part of  a "pattern" of attempts, over a spectrum of communications, in attempting to conceal the MIP payment to Nationstar,

77. In this light, Mr. Rosendale amends the cause of action alleging RESPA violations (using Roman numerals to avoid confusion)

I.  On more than two occasions Nationstar failed to answer or adequately answers  Qualified Written Requests  from the plaintiff.[8]

II Plaintiff was damages because:

(a) He lost time an expended printing and postage  funds in responding to inadequate responses, and

(b) He is suffering from clinical depression resulting from Nationstar's inadequate and untruthful responses to his QWR,

---

[8]  *Kapsis v. AMHSI*,  923 F, Supp. 3d, 430 (EDNY, 2013*)*

III. Nationstar's failure to answer QWR relating to the ownership of his loan were part of a pattern intended to conceal the fact that it had collected against the MIP by exercising "Type 22."

IV. He is entitled to actual damages together with statutory damages up to $2,000 per incident.

## AS AND FOR A SECOND CAUSE OF ACTION
### As Against Unspecified Nationstar HECM Acquisition Trust
### Violation of TILA

78. Judge Roman dismissed this cause of action, and so it not pursued although Mr. Rosendale believes the allegation to have been true.

## AS AND FOR A THIRD CAUSE OF ACTION
### As Against Nationstar – Conversion

79. Judge Roman denied Nationstar's motion to dismiss this cause of action, and thus it is re-pled as before/

80. In February of 2019, Nationstar created a loan to Mr. Rosendale of $7,265 by withdrawing funds from his credit line and depriving him of its use.. It then sent it to the Dutchess County clerk for taxes which Mr. Rosendale had already paid. In doing so, it intentionally and without authority it exercised control over personal property belonging to him interfering with his right of possession.

82. Again in May, Nationstar created a loan to Mr. Rosendale for the express purpose of paying a May 31, 2019 property tax instalment, told him in a phone call

26

after the deduction that it was using the money to pay his property taxes  but then did not pay them. As a consequence , the payment was missed and he incurred a penalty.

83. In this regard, 3 NYCRR 79.12 in March of 2020, after the prior complaint was submitted, amended to specify that the lender my only use the line of credit to pay he property taxes when "the borrower's payment of such property charges is already more than 30 days overdue...,"

## AS AND FOR A FOURTH CAUSE OF ACTION –
### As Against Nationstar – Gross Negligence

84. Judge Roman did not dismiss this cause of action and so it is  repeated as before with amplification of the funds missing in the mysterious shrinking line of credit.

86.  Department of Financial Security rule § 419.2 titled  "Servicer duty of fair dealing" hold that " A Servicer has a duty of good faith and fair dealing in its communications, transactions, and course of dealings with each borrower in connection with the servicing of the borrower's mortgage loan. This includes, but is not limited to, the duty to: (a) Safeguard and account for any money handled for the borrower; (b) Follow reasonable and lawful instructions from the borrower consistent with the underlying note and mortgage; [and] (c) Act with reasonable skill, care and diligence…"

87. Ms. Begum states that Nationstar [

cited earlier] took funds from Mr. Rosendale's line of credit without prior notice "…in order to protect our interest in the property, if property taxes become delinquent, then we are at risk of having the County place a lien against the property." The property taxes had not become delinquent and even if they had, Nationstar could not act under the mortgage without giving Mr. Rosendale 30 days notice and a chance to cure.

88. There is no language in the mortgage which would support Ms. Begum's contention that because Nationstar is "a risk" it must advance was monies from his account without giving Mr. Rosendale the prior notice required by his mortgage and New York's Real Property Law.

89. Between March and August of 2020, Nationstar systematically reduced Mr. Rosendale's line of credit without prior notice or explanation.

90. In other words, despite the requirements of § 419 to "safeguard" Mr. Rosendale's secured line of credit, Nationstar took an action to protect itself without notifying him in advance in violation of New York law and the contract deducted funds out of his secured credit line to pay taxes which weren't due.

## AS AND FOR A FIFTH CASE OF ACTION
### As Against Nationstar – Breach of the Covenant of Good
### Faith and Fair Dealing in Contract

91. Judge Roman dismissed this cause of action which involves
Nationstar's charging of interest at a rate higher that specified) by the mortgage
and it is not re-pled because( thanks to a recent decision of the New York Court of
Appeals) it can now be plead as breach of contract.

## AS AND FOR A SIXTH CAUSE OF ACTION
### As Against Nationstar/Champion - Violation of New York GBL 349

92**.** Judge Roman did not dismiss this cause of action and so it is pleaded
again.

93. New York GBL 349 holds that "Deceptive acts or practices in the
conduct of any business, trade or commerce or in the furnishing of any service in
this state are hereby declared unlawful." It provides a private right of action.

94. 3 NYCRR-NY 79.7 (e) requires that

"Prior to offering reverse mortgage loans, all lenders must prepare a form
entitled 'Lender's Limited Waiver of the Right of Foreclosure' for review
and approval by the superintendent. This document shall set forth the
termination events, as applicable, pursuant to section 79.9 of this Part and
shall be executed in connection with the closing of every 280-a loan. The
lender shall furnish a copy of the executed form to every mortgagor(s) at
closing and shall keep the original form on file for the life of the loan."

95. There was no such "Lender's Limited Waiver of the Right of
Foreclosure" attached to Mr. Rosendale's mortgage. In her letter to the New York

Department of Financial Security, (Exhibit E cited earlier) Ms. Begum  states (on

Page 2): "There is no document entitled a 'Limited Waiver of the Right to

Foreclose.'"

96.  This omission would lead a borrower to believe that, as Ms. Begum

asserts, there are no restrictions on Nationstar's right to foreclose if it believes its

security is at risk. Since Nationstar says there is no such document in his case, by

extension this means that the required document was not provided to *any* reverse

mortgage prepared by the mortgage servicer's predecessors.

97. Further,  in Ms. Begum's letter to Mr. Rosendale of September  18,

2019, (cited earlier) Ms. Begum state that "If the borrower  fails to make …the

Lender may  do and pay  whatever is necessary to protect the value of the property

and other items."  Nowhere in Ms. Begum's letter is there a reference to the

requirements in state law and the standard mortgage contract  to provide the

borrower with the 30-day notice required.

98. As such, Nationstar's  deceptive actions in violation of  GBL 249

includes deceiving borrowers  by not educating them  that it is required to filed a

"limited waiver" of its right to foreclose as well as a pattern of deceptively and

unlawfully paying the property taxes on Mr. Rosendale's  home in violation of

New York State law and the mortgage agreement and unlawfully declaring his

reverse mortgage loans in default based on the payment of property taxes which

were neither delinquent nor in default with local municipalities at the time of the payment.

99. Since Nationstar's position is that it "may do and pay whatever is necessary to protect the value of the property" without reference to the 30-day window provided by state law and the mortgage contract, this by extension indicates Nationstar's policy is practiced in its dealings with all borrowers in services, and not just Mr. Rosendale.

100. GBL 249 (h) provides a private cause of action.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### Breach of Contract

101. As noted earlier, Mr. Rosendale's mortgage required him to pay interest based on the LIBOR figures published daily in the Wall Street Journal; those figures at the time he signed his mortgage(and at the present time) were calculated only to the second digit to the right hand side of the published number.

102. The Note on Mr. Rosendale's loan establishes a variable interest rate on his mortgage added onto the LIBOR figure published daily in the Wall Street Journal. That published figure only goes to two places to the right of the decimal point.

31

103. Nationstar has been collecting and continues to collect interest calculated to the third figure to the right of the decimal or an additional 10 basis points.

104. In December of 2020 in deciding *U.S. Bank v. Nelson,* the New York Court of Appeals ruled that a promissory note "is a contract."

105. Mr. Rosendale signed a promissory note requiring him to pay interest at one level while for a decade Nationstar has breached the contract by charging him a higher rate of interest.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### Reformation of the Mortgage Contract

106. As described above, at the June 2009 closing, the lender's lawyer submitted an inaccurate property description. The title search presented by counsel for the lender was seriously inaccurate in two respects. First, it described "…that parcel of land…as being the ceded portion therein designated as 'abandoned road.'" The "abandoned road" was the early 20th century route of Dutchess Route 44, which the country had moved slightly to the north. Mr. Rosendale knew at the time of the 2009 closing that he did not own the "abandoned road" and refused to sign the mortgage with it included.

107. Subsequently, the lender reinserted the incorrect property description and had his signature notarized by a person who was not present when he signed it.

 If he agreed to that, Mr. Rosendale would have been making a false statement on a federally insured loan and so he would not agree.

108. Second, a HECM loan is limited by an appraisal  which in Mr. Rosendale's case is based on "comparables"  with residences and  5 acres of land. NYCRR 79.5(g)  states that "All lenders shall be prohibited from using or attaching any property or asset of the mortgagor except the real property securing the reverse mortgage loan in satisfaction of a reverse mortgage  obligation." [Emphasis  added] The lender placed a lien on a larger parcel of land than the five acres pledged.

109. Mr. Rosendale would not agree to sign  a mortgage with this property description because it would mean pledging  an important piece of property --- "the abandoned road" --- that in fact he did not at that time own.

110.  Because of Mr. Rosendale's objections, the inaccurate property description was not included in his mortgage when he signed it.. It reappears *in the wrong place* in the  copy of the mortgage sent to Mr. Rosendale in  August of 2019. The notary is a female lawyer. There was no female lawyer present when Mr. Rosendale signed the mortgage and  the Notary Public's stamp does not appear on Mr. Rosendale's single copy of the mortgage as given to him at the time/

**111.**  New York RPP 288 (1) requires that "The acknowledgment or proof, within this state, of a conveyance of real property situate in this state may be made…(before) a notary public."

112. The mortgage is notarized, but  at some time after Mr. Rosendale As such, there is no conveyance of Mr. Rosendale's property to secure the note.

113. Judge Roman  denied  Nationstar's motion to dismiss this cause of action asking for a declaratory judgement that the mortgage is void but suggested that in filing a Third Amended Complaint, he might ask for a reformation of the mortgage, as an option to striking the mortgage contract in its entirety. In this light, again using Roman numerals to distinguish the allegation in this  new complain, these are pleaded  as follows:

I.  The mortgage was altered after  Mr. Rosendale signed it to include property which he did not intend to commit,  which was in excess of the property used to calculate the maximum loan benefit, and which included land he knew he did not at that time own.

II. To resolve this, Mr. Rosendale asks that the mortgage  be reformed to include only his residence (that being the structure in which he lives)  and the actual perimeter around  it, excluding any other property or land.

III.  To the extent that Nationstar is opposed to the mortgage contract being so limited, Mr. Rosendale seeks a  declaratory  judgment pursuant to FRCP 37 and

28 U.S. 2201 that because the mortgage has been falsely completed after the time

he signed it, the mortgage agreement is null and void.

### AS AN NINTH CAUSE OF ACTION
### As Against Nationstar
### Infliction of Emotional Distress

114.  Judge Roman granted that part of Nationstar's 12 (b) (6) motion  to

dismiss the cause of action which alleges that the loan servicer's actions cause

severe emotional distress.

115.  The original allegation was not specific on whether Mr. Rosendale

intended to plead negligent (NED) or intentional infliction of emotional distress. In

either instance, the actions complained of amounted to "conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community."

116.  The New York Department of Financial Services  requires in 3

NYCRR 419-6 (2) that the loan servicer must provide " a customer service

department staffed by trained personnel to whom borrowers may direct complaints

and inquiries" creating a duty to Mr. Rosendale. It breached this duty by having

staff which when  money was dedicated  from Mr. Rosendale's line of credit to pay

taxes which were not due  were sufficiently unfamiliar with New York law not to

understand his complaints and correct them.

117.  According to the CV published in social media, the highest level of education of the Kauser Begum who lives in Dallas and is believed to be the person of the same name who responded  Mr. Rosendale's QWR is  a "pre college" school in India. There is no indication that she received any training in New "York property law.

118. Therefore, Nationstar failed in its "duty" to provide a "trained" person to respond to his information requests, and  he was injured when he inaccurate responses causes him emotional distress under an NED standard.

119. Alternatively in pleading IED, Nationstar intentionally withdrew funds from Mr. Rosendale's account  to pay bills it knew were not due in order to be (in its flawed opinion) able to assert a $600,000 "Type 52" claim on the MIP insurance, and when he objected, in an effort to quell his objections, falsely threatened him with foreclosure, which is knew would cause him extreme emotional distress.

120. As a direct and reasonably foreseeable consequence, he became as his mental health professional has diagnosed, clinically depressed which is a physical injury.

## AS A TENTH CAUSE OF ACTION
## BREACH OF CONTRACT IN CHARGING HIGHER
## INTEREST ON HIS LOAN  THAN AGREED UPON

121. A  " promissory note is a contract." [9]  As illustrated by the Mortgage and Note, the terms Mr. Rosendale agreed  to were to pay interest at a premium over a rate published in the Wall Street Journal.  That published rate only goes to two  points to the right of the decimal.  a predecessor asserts this is a "typographical error" and it should really be three points to the right.

122.  For starters, the newspaper doesn't publish "three digits over" and so the lender seeks a base margin which doesn't exist and which is advantageous to Nationstar  and disadvantageous to Mr. Rosendale

## AS AN ELEVENTH CAUSE OF ACTION
## VIOLATION OF GBL IN SENDING MR. ROSENDALE
## MISLEADING CORRESPONDENCE IMPLYING HE WAS
## IN DANGER OFFORECLOSURE

123. On March 1, 2021,  while this case was proceeding, New York Attorney General Letitia James issued  Assurance No. 21-006 in which Nationstar agreed to pay a $500,000 fine because (according to the AG's complaint) it regularly (a) Paid the property taxes of borrowers which were not due and  without consulting them and (b) Sent them notices and forms indicating they were in imminent dangers of foreclosure when they were not.

---

[9]  *U.S. Bank v. Nelson*, 31 NY 3rd 98 (2020)

124.  The New York AG said that Nationstar's patterns of "paying taxes without adequate notice" and that it's mailing of documents intended to make borrowers think they were in  foreclosure violated New York GBL 349 because these are "deceptive business practices."  The settlement states that it does not block borrowers such as Mr. Rosendale who were injured by such practices from pursuing a private right of  action.

125. In addition to the ground cited earlier, plaintiff complains that Nationstar's payment of his property taxes when they were not due and without prior notice as well as the pattern of sending notices to him that he should contact a counseling agency as he was in peril of losing his home violated GBL 349

## SUMMARY AND CONCLUSION

126.  This is not an occasion in which Nationstar's infamous customer support personnel made an error. Put succinctly, Nationstar "threw him under the bus" to put itself in a position to college a six figure MIP payment. It realized it had been overcharging him interest and so it included to "clerical error" letter in its response to the CFPB to justify those excessive charges.  He asks that these allegations be given to a jury,

## DEMAND FOR DAMAGES

WHEREFORE, Mr. Rosendale demands as follows:

(a) One million in punitive damages to deter Nationstar from similar conduct the future.

(b) $50,000 to compensate him for his emotional distress injuries.

(c) For payment of his mailing and costs in responding to QWR, $185.

(d) $25,000 for his medical expenses not covered by his insurance.

(e) Statutory damages of $2,000 for each RESPA violation, of $10,000 in all.

(e) Treble damages for all injuries suffered under the General Business law

(d) the recoupment of approximately $3,500 in overpaid mortgage insurance.

(e) The recoupment of twice the amount on interest it has charged on his load since it list refused an payment request. Or about $200,000.

(f) Together with such other and further relief as the court deems just.

A jury trial is demanded.

Respectfully,

*Donald P. Rosendale*

Donald P. Rosendale, *pro se* January 23, 2022

'

\