UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

DONALD P. ROSENDALE,

                        Plaintiff,                     Case No.: 7:19-cv-09263 (NSR)(PED)

      v.

MR. COOPER GROUP INC. d/b/a
NATIONSTAR MORTGAGE, NATIONSTAR
MORTGAGE LLC Directly and as Loan
Servicer for an Unspecified Nationstar HECM
Acquisition Trust, Champion Mortgage and Dr.
Ben Carson in his capacity as Secretary of the
U.S. Department of Housing and Urban
Development,

                        Defendant(s).
_____X

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

                      Law Office of Anthony W. Vaughn, Jr. LLC
                      300 Cadman Plaza West
                      One Pierrepont Plaza, 12th Floor
                      Brooklyn, New York 11201
                      Tel: (908) 300-5455

                      *Attorney for Nationstar Mortgage LLC d/b/a Champion*
                      *Mortgage*

On the Brief:

      Anthony W. Vaughn, Jr.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS...................................................................................3

ARGUMENT ......................................................................................................3

I.   PLAINTIFF FAILED TO PROVE STATUTORY DAMAGES OR
ACTUAL DAMAGES RELATED TO EITHER UNTIMELY
ACKNOWLEDGMENT OR UNTIMELY RESPONSES TO HIS
LETTERS UNDER RESPA .......................................................................3

II.   PLAINTIFF'S CLAIM FOR CONVERSION MUST BE DISMISSED
AS DEFENDANT HAD CONTRACTUAL AUTHORITY TO
ADVANCE FUNDS FROM PLAINTIFF'S LINE OF CREDIT TO
PAY PROPERTY TAXES AND TO SECURE HAZARD INSURANCE
...................................................................................................................7

III.  PLAINTIFF'S CLAIM FOR GROSS NEGLIGENCE MUST BE
DISMISSED BECAUSE DEFENDANT DOES NOT OWE A DUTY TO
PLAINTIFF...............................................................................................14

IV.  PLAINTIFF'S SIXTH AND ELEVENTH CAUSES OF ACTION FOR
VIOLATION OF GBL § 349 MUST BE DISMISSED BECAUSE
DEFENDANT'S ACTIONS WERE NOT MISLEADING AND
PLAINTIFF DID NOT SUFFER ANY DAMAGES................................16

V.   PLAINTIFF'S SEVENTH AND TENTH CAUSES OF ACTION FOR
BREACH OF CONTRACT MUST BE DISMISSED .............................19

VI.  PLAINTIFF'S CLAIMS SEEKING REFORMATION AND
EXTINGUISHMENT OF THE 2009 MORTGAGE ARE BARRED BY
THE SIX-YEAR STATUTE OF LIMITATIONS ...................................20

VII. PLAINTIFF'S NINTH CAUSE OF ACTION FOR NEGLIGENT AND
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST
BE DISMISSED ........................................................................................24

CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Adam Plotch LLC v. World Savings Bank, FSB*, 15-CV-06162; 2018 WL 327247 at

   *6 (E.D.N.Y. Jan. 8, 2018) ...................................................................22

*Bank of NY Mellon v. Regalbuto*, 2021 WL 73827 **4 (Sup. Ct. Kings Cnty.

   January 5, 2021) ...............................................................................21

*Campione v. Campione*, 942 F.Supp.2d 279, 284 (E.D.N.Y. 2013) ......................21

*Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 WL 4368109 at *4

   (S.D.N.Y. Sept. 20, 2022) ............................................................. 15, 24

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp.3d 729, 781-

   783 (S.D.N.Y. 2018)..................................................................... 16, 18

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp. 162,

   204 (S.D.N.Y. 2011)........................................................................7

*Farash v. Cont'l Airlines, Inc.*, 574 F.Supp.2d 356, 367-68 (S.D.N.Y. 2008) .......15

*Fournier v. Bank of Am. Corp.*, No. 5:13-CV-00702, 2014 WL 421295 at *4

   (N.D.N.Y. Feb. 4, 2014)....................................................................5

*Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)......................24

*Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 44 A.D.3d 551, 553

   (1st Dep't 2007)..............................................................................21

*Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (N.Y. 1993) ...........................25

*In re Broadway Equity Holdings LLC*, 617 B.R. 777, 792 (S.D.N.Y. Bankr. 2020)

............................................................................................................23

*Investors Savings Bank v. Cover*, 187 A.D.3d 868, 130 N.Y.S.3d 371, 372 (2d

Dept. 2020) .........................................................................................21

*Matter of Offerman*, 172 A.D.2d 838 (2d Dept. 1991)............................................23

*Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445, 2020 WL 5577730 at *3

(E.D.N.Y. Sept. 17, 2020) ..................................................................15

*Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y. 2004) ....................................7

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 13-14 (2d

Dept. 2012) .........................................................................................16

*Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2nd Cir. 2015) .................................16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d

20, 25 (1995)......................................................................................18

*Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F.Supp.2d 480, 498

(S.D.N.Y. 2012)..................................................................................15

*Rosendale v. Mr. Cooper Group Inc.*, No. 19-CV-9263, 2021 WL 4066821 at *14

(S.D.N.Y. September 7, 2021) ..............................................................5

*Roth v. CitiMortgage*, No. 12-CV-2446 SJF WDW, 2013 WL 5205775, at *7

(E.D.N.Y. Sept. 11, 2013) ....................................................................6

*Saull v. Seplowe*, 32 Misc.2d 303 (Kings Cnty. 1961) ...........................................21

*Son Fong Lum v. Antonelli*, 102 A.D.2d 258, 262 (2d Dept. 1984) .......................23

*Strough v. Wilder*, 119 N.Y. 530, 535 (1890) ..........................................................23

*Sullo v. Margab Realty, LLC*, 20 Misc.3d 1117(A) (Table) (N.Y. Cnty. 2008) .....22

*Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 Fed. Appx. 20, 22 (2d Cir.

    2016) ...........................................................................................................................25

**Statutes**
§ 79.7(d) ........................................................................................................... 17, 18

12 U.S.C. § 2605(f)(1) ............................................................................................5

12 USC § 1715z-20 ...............................................................................................17

3 NYCRR 79 ..........................................................................................................17

3 NYCRR-NY 79.7(e) ..........................................................................................16

79.1(b) ...................................................................................................................17

GBL § 349 ................................................................................................ 16, 18, 19

N.Y. Comp. Codes R. & Regs. Tit. 3 § 79.7(d) ...................................................17

RPL § 329 ......................................................................................................... 22, 23

**Rules**
CPLR § 213(4) .......................................................................................................19

CPLR § 213(6) .......................................................................................................21

FRCP 19 .................................................................................................................23

Rule § 419.2 ................................................................................................ 14, 15

Defendant Nationstar Mortgage LLC (s/h/a Mr. Cooper Group, Inc. d/b/a Nationstar Mortgage, LLC d/b/a Champion Mortgage) ("Defendant" or "Nationstar") respectfully submits this Memorandum of Law in Support of Defendant's Motion for Summary Judgment pursuant to FRCP 56.

## PRELIMINARY STATEMENT

This lawsuit, which was originally filed in 2019, includes several causes of action against a reverse mortgage servicer for alleged conduct related to servicing activity and loan origination activity. After three amended Complaints, the case appears to be about nothing more than Plaintiff Donald P. Rosendale's ("Plaintiff") frustration as a result of various communications had with Defendant. As a result of Plaintiff's failure to fulfill his obligations under the loan documents, and lack of responsiveness to Defendant's requests for information, a disagreement arose as to whether property taxes and hazard insurance premiums were due and/or paid. This led to a flurry of correspondence exchanged between the parties, which continued during this case. Plaintiff filed this lawsuit seemingly in retaliation and in the process he seeks a reformation or discharge of the mortgage entirely.

The first cause of action alleges Nationstar violated RESPA by failing to timely acknowledge and/or respond to Qualified Written Requests by Plaintiff. The second cause of action was previously dismissed and not replead. The third cause of action alleges conversion by withdrawing funds from Plaintiff's line of credit. Similarly, the fourth cause of action alleges Nationstar is liable for gross negligence based upon Defendant's advancement of funds from the Plaintiff's line of credit. The fifth cause of action was previously dismissed and not replead. The sixth and eleventh causes of action alleges Defendant violated Section 349 of the New York General Business Law by failing to provide Plaintiff with a copy of the Lender's Limited Waiver

1

of the Right of Foreclosure and for providing misleading correspondence to Plaintiff. The seventh and tenth causes of action sound in breach of contract for incorrectly calculating the interest on Plaintiff's loan.  The eighth cause of action seeks reformation or extinguishment of the reverse mortgage.  The ninth cause of action seeks damages against Defendant for negligent infliction of emotional distress and intentional infliction of emotional distress.  For the reasons set forth below, the Third Amended Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

The facts underlying the allegations in this case are extensive.  In the interest of brevity, the Court is respectfully referred to Defendant's Rule 56.1 Statement of Undisputed Material Facts in Support of the Motion for Summary Judgment that accompanies this Memorandum of Law.

## ARGUMENT

### I.    PLAINTIFF FAILED TO PROVE STATUTORY DAMAGES OR ACTUAL DAMAGES RELATED TO EITHER UNTIMELY ACKNOWLEDGMENT OR UNTIMELY RESPONSES TO HIS LETTERS UNDER RESPA

In support of the RESPA claim in the Third Amended Complaint, Plaintiff alleges Defendant failed to time acknowledge his September 2, 2019, September 19, 2019 and October 8, 2019 QWRs. See Declaration of Anthony W. Vaughn, Jr. (hereinafter "*Vaughn Decl.*"), Ex. 1, ¶ 69.  Plaintiff also alleges Defendant failed to adequately respond to his September 19, 2019, October 8, 2019 QWRs.  *Id.*  Plaintiff's Further Response to Interrogatories dated July 21, 2022, alleges Defendant failed to acknowledge and respond to a QWR dated February 8, [202]. *Id.*

On September 2, 2019, Plaintiff sent a letter to Champion Mortgage in response to a letter dated August 23, 2019, disputing that he did not pay his property taxes and/or insurance.  *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 138, l. 15-22; Ex. 16. On September 6, 2019, Champion sent a letter to Plaintiff acknowledging receipt of the letter dated September 2, 2019. See Declaration of Daniel Delpesche, (hereinafter "*Delpesche Decl.*") ¶ 35, Ex. EE.  On September 18, 2019, Champion sent a letter to Plaintiff in response to his letter dated September 2, 2019, to advise that it received a Cancellation Notice from Liberty Mutual and asked Plaintiff to pay his hazard insurance premium by September 25, 2019 and to send proof of the payment to Champion. *Delpesche Decl.*, ¶ 36, Ex. FF. Therefore, Defendant timely acknowledged and responded to Plaintiff's letter dated September 2, 2019.

On September 19, 2019, Plaintiff faxed a letter to Champion requesting an accounting of an escrow account. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 155, l. 19-25, p. 156, l. 2; Ex. 17.

On October 8, 2019, Plaintiff faxed a letter to Champion in response to Champion's letter dated September 18, 2019, and requested a copy of the Cancellation Notice that was issued by Liberty Mutual. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 187, l. 2-7; Ex. 19.  On October 10, 2019, Champion sent a letter to Plaintiff acknowledging Plaintiff's recent contact regarding his reverse mortgage.  *Delpesche Decl.*, ¶ 40, Ex. JJ. Also, in a letter dated October 22, 2019, to the NYS Department of Financial Services, a substantive response is given to its inquiries concerning payment of taxes and insurance, and the Plaintiff is copied on the letter. *Id.*, ¶ 42, Ex. LL.  Included with the letter, is a copy of the Cancellation Notice from Liberty Mutual dated August 6, 2018 and the notice dated September 5, 2019. *Id.*  On October 31, 2019, Champion sent another letter to Stephen Deely, which includes a timeline of dates and amounts when Champion reviewed Plaintiff's account and disbursed funds for taxes and insurance on Plaintiff's behalf. *Id.*, ¶ 44, Ex. AA.  Again, Plaintiff is copied on the letter. *Id.* Although the letter is not addressed directly to the Plaintiff the requested information, specifically, the Cancellation Notice dated September 5, 2019, was timely sent to Plaintiff. *Id.* Therefore, Defendant timely acknowledged and responded to Plaintiff's letter dated October 8, 2019.

During discovery, neither Plaintiff nor Defendant produced a letter from Plaintiff dated February 8th.  During Plaintiff's deposition, clarification was requested as to what letter he was referring to.  *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 217, l. 5-25, p. 218, l. 2-5.  Plaintiff reiterated his belief that he sent a letter to Defendant dated February 8, 2022. *Id.*  Thus, there is no evidence to support this allegation.

4

The Third Amended Complaint also alleges that Plaintiff sent a letter dated March 3, 2020, but he did not receive a response. *Vaughn Decl.*, Ex. 1, ¶ 70. The letter requests the "statute" (sic) of the Plaintiff's loan and the identity of the servicer. *Delpesche Decl.*, ¶ 48, Ex. QQ.[1] This letter may not qualify as a QWR because while it requests the identity of the servicer, it does not request information related to scheduled payments, or the amount of principal, interest and other amounts due to the servicer.

### i. Statutory Damages

Therefore, arguably the only letters that were neither acknowledged nor responded to by Defendant are Plaintiff's letters dated September 19, 2019 and March 3, 2020. Even if this Honorable Court concludes that the substantive letter dated October 22, 2019, sent to the NYS Department of Financial Services is not sufficient to meet the requirements of Section 2605 since it was not addressed to the Plaintiff, this is still remarkable given the significant amount of correspondence that was submitted by the Plaintiff to Defendant concerning his loan. Further, this hardly supports an allegation of a pattern and practice of noncompliance with the requirements of Section 2605. 12 U.S.C. § 2605(f)(1). As previously determined by this Honorable Court, three distinct Section 2605 violations are insufficient to establish a pattern or practice. See *Rosendale v. Mr. Cooper Group Inc.*, No. 19-CV-9263, 2021 WL 4066821 at *14 (S.D.N.Y. September 7, 2021) (*citing Fournier v. Bank of Am. Corp.*, No. 5:13-CV-00702, 2014 WL 421295 at *4 (N.D.N.Y. Feb. 4, 2014)). Accordingly, Plaintiff has failed to meet his burden to establish a pattern and practice of noncompliance with Section 2605, and his claim for statutory damages should be dismissed.

---

[1] It is noteworthy that in response to this Court's Order dated January 23, 2020, Defendant's prior counsel Charles Jeanfreau, Esq. e-filed a letter on January 28, 2020, identifying the owner and servicer of the Plaintiff's loan (Dkt. 21), 35 days before the Plaintiff's March 3, 2020 letter.

### ii.    Actual Damages

Plaintiff has failed to allege or demonstrate that he sustained actual damages as a result of Defendant's failure to acknowledge or respond to his QWR letters.  In the Third Amended Complaint Plaintiff alleges his damages include his time to write the letters, print the letters and postage costs. *Vaughn Decl.*, Ex. 1, ¶¶ 73, 77.  In addition, Plaintiff alleges he suffers from clinical depression as a result of inadequate and untruthful responses to his QWR. *Id.* at ¶77.

First, Plaintiff has failed to cure the issues that were raised in the Order dated September 7, 2021, denying in part and granting in party Defendant's motion to dismiss.  The claim for damages related to Plaintiff's time to write and print letters and the cost of postage, essentially requests reimbursement for routine communications with his loan servicer.  Assuming Plaintiff is entitled to compensation for his time and reimbursement for postage costs, (a position that Defendant disputes), Plaintiff does not describe how Defendant's alleged failure to acknowledge or respond to a QWR caused him to lose time or money.  Moreover, Plaintiff proffers no evidence to support his allegation that he suffers from clinical depression as a result of Defendant's failure to acknowledge and/or respond to his QWRs.  These conclusory allegations are precisely the type of allegations that were held as insufficient to support a claim for actual damages.  *See Roth v. CitiMortgage*, No. 12-CV-2446 SJF WDW, 2013 WL 5205775, at *7 (E.D.N.Y. Sept. 11, 2013) ("Plaintiff alleges she 'sustained actual damages…, including but not limited to the following: … photocopying charges, postal charges, travel expenses, attorney costs, worry, anxiety, emotional distress and harm, as well as inconvenience.'")

Second, Plaintiff admitted that he was not caused any damages or harm due to the alleged failure by Defendant to either acknowledge or formally respond to his QWRs. *Vaughn Decl.*, Ex.

13, Rosendale EBT1, p. 203, l. 19-25, p. 204, l. 2-9.  Due to the foregoing, Plaintiff has failed to establish a claim for actual damages.  Therefore, the claim for actual damages should be dismissed.

Due to the foregoing, the first cause of action sounding in RESPA should be dismissed.

## II.   PLAINTIFF'S CLAIM FOR CONVERSION MUST BE DISMISSED AS DEFENDANT HAD CONTRACTUAL AUTHORITY TO ADVANCE FUNDS FROM PLAINTIFF'S LINE OF CREDIT TO PAY PROPERTY TAXES AND TO SECURE HAZARD INSURANCE

Under New York law, to plead a claim for conversion, Plaintiff must establish that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of plaintiff's rights." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp. 162, 204 (S.D.N.Y. 2011) (*citing Moses v. Martin*, 360 F.Supp.2d 533, 541 (S.D.N.Y. 2004)).  In addition, the allegations of wrongdoing to support a conversion claim must differ from a breach of contract claim. *Id.*

### i.   Property Taxes

In support of his Third Cause of Action for conversion, Plaintiff identifies three instances when money was withdrawn from his line of credit. *Vaughn Decl.*, Ex. 7.  He contends that the withdrawal of $7,265.00 in February 2019 to pay his taxes was improper. *Id.* He also alleges, Defendant's creation of a loan to Plaintiff to pay his May 31, 2019 tax installment, but non-payment caused him to incur a penalty. *Id.*  Then, in or about August 23, 2019, Defendant withdrew $7,473.00 from his line of credit to pay Plaintiff's property taxes. *Id.*  Plaintiff disputes Defendant's authority to withdraw money from his line of credit.

Plaintiff had a history of failing to pay his property taxes on time.  On December 19, 2018, Champion sent a letter to Plaintiff notifying him that his property taxes were not paid. *Delpesche*

*Decl.*, ¶ 24, Ex. T.  The letter asks Plaintiff to pay his property taxes immediately, and if he does not, then Champion will have to advance funds to pay the tax bill. *Id.*  On January 23, 2019, Champion sent a letter to Plaintiff advising there was a delinquent tax bill indicating his taxes were not paid. *Delpesche Decl.*, ¶ 26, Ex. V.  The letter further states that Plaintiff's failure to pay his taxes prior to the delinquency date "could result in your loan being placed into default and being called due and payable.  If your loan is approved to be called due and payable, it could lead to foreclosure on your home, which we want to help you avoid." *Id.*  According to the letter, the delinquent tax bill related to the 2017 property taxes. *Id.*

On January 24, 2019, Plaintiff faxed a letter to Champion stating he has been slow in paying his property taxes. *Delpesche Decl.*, ¶ 26, Ex. V. Citing to the terms of the Home Equity Conversion Loan Agreement, Plaintiff wrote, the proper procedure for Champion to take when he is delinquent in paying his property taxes is for Champion to pay them and add the paid taxes to the balance of his line of credit. *Id.*  On January 31, 2019, Champion sent a letter to Plaintiff in response to his letters dated January 24, 2019 and January 28, 2019, regarding his obligation to pay property taxes and denying the letter dated December 19, 2018 was a threat to accelerate the debt. *Delpesche Decl.*, ¶ 27, Ex. W.  The letter cites the Loan Agreement and Mortgage as the basis for authority to Champion to make a disbursement for Lender Placed Insurance. *Id.*

Notably, paragraph 2 of the Mortgage states,

> [b]orrower shall pay all property charges consisting of taxes, round rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provide in the Loan Agreement.

*Delpesche Decl.*, ¶ 4, Ex. B.

Paragraph 5 of the Mortgage states,

> [i]f Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property … then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentions in Paragraph 2.

*Id.*

The Plaintiff's obligations to pay his property taxes and hazard insurance timely is also described in the Home Equity Conversion Loan Agreement dated June 4, 2009. *Delpesche Decl.*, ¶ 6, Ex. D.   Specifically, paragraph 2.10.5 states,

> [i]f Borrower fails to pay the property charges in a timely manner, and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16.  If a pattern of missed payments occurs, Lender may establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have Lender pay the property charges.

*Id.*

Section 2.16 of the Home Equity Conversion Loan Agreement states, "Unscheduled Payments. Loan Advances made pursuant to Sections 2.4, 2.9.2, 2.9.3, 2.10.3, 2.10.5 and 2.15 shall be made from a line of credit under Section 2.6 or 2.7 to the extent possible." *Id.*

On February 11, 2019, the Dutchess County Commissioner of Finance issued a Tax Receipt. *Delpesche Decl.*, ¶ 28, Ex. X. The tax receipt reflects the payment was made toward property taxes that were due in 2017. *Id.* The tax receipt states the payment is overdue and includes a fee in the amount of $225.40 for interest and penalty. *Id.* Notably, Plaintiff did not make the payment until February 11, 2019, the same date that Defendant advanced the funds from Plaintiff's line of credit. *Id.*

9

Plaintiff admitted that he did not timely pay his 2017 property taxes because he needed to buy a car. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 201, l. 20-25, p. 202, l. 2-6.

On February 12, 2019, Champion sent a letter to Plaintiff requesting proof of payment of his property taxes and/or insurance. *Delpesche Decl.*, ¶ 29, Ex. Y.  The letter also states that Champion advanced funds to pay the property taxes and/or insurance on Plaintiff's behalf. *Id.* On February 13, 2019, the County of Dutchess, Department of Finance issued a check to Champion's vendor, Lereta, LLC, in the amount of $7,265.95 as a refund for the property taxes. *Delpesche Decl.*, ¶ 30, Ex. Z.  On March 25, 2019, Champion applied a credit to Plaintiff's line of credit in the amount of $7,265.95.  *Delpesche Decl.*, ¶ 31, Exs. AA and R.

On May 21, 2019, Champion advanced funds in the amount of $7,196.88 to pay the 2019 taxes on Plaintiff's behalf. *Delpesche Decl.*, ¶ 31, Exs. AA and R.  On July 5, 2019, Champion applied a refund to Plaintiff's line of credit in the amount of $7,196.88 plus all fees, interest, and MIP. *Id.*

On August 22, 2019, Champion advanced funds out of Plaintiff's line of credit in the amount of $7,473.60 to pay Plaintiff's 2018 property taxes.  *Delpesche Decl.*, ¶ 31, Exs. AA and R; and ¶ 36, Ex. FF. The tax receipt dated September 13, 2019, reflects the payment was made toward property taxes that were due in 2018. *Id.* at Ex. BB. The tax receipt states the payment is overdue and includes a fee in the amount of $207.54 for interest and penalty. *Id.*

Thus, it is clear, that Plaintiff's property taxes were overdue.  As Plaintiff elected not to establish an escrow account, he was obligated to pay his property taxes and hazard insurance timely. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 183, l. 2-7.  Plaintiff's repeated failure to pay his property taxes timely, triggered paragraphs 2 and 5 of the Mortgage and paragraph 2.10.5 of the Home Equity Conversion Loan Agreement.  Thus, Defendant had contractual authority to

10

advance funds from the Plaintiff's line of credit to pay his property taxes. Had Plaintiff fulfilled his obligations under the Mortgage by paying his property taxes on time, draws from his line of credit could have been avoided.

Furthermore, the funds that were advanced from Plaintiff's line of credit on February 11, 2019 in the amount of $7,265.95 for delinquent 2017 taxes were credited back to Plaintiff's line of credit on March 25, 2019. *Delpesche Decl.*, ¶ 31, Exs. AA and R. In addition, the funds that were advanced from Plaintiff's line of credit on May 21, 2019, in the amount of $7,196.88 to pay the 2019 taxes were credited back to Plaintiff's line of credit on July 5, 2019, plus all fees, interest and MIP. *Id.* However, the funds that were advanced from Plaintiff's line of credit on August 22, 2019, in the amount of $7,473.60 for delinquent 2018 taxes were not credited back to Plaintiff's line of credit, because they were not paid by Plaintiff. Most significantly, Plaintiff's letter dated January 24, 2019, confirms his understanding of Defendant's contractual right to advance funds from his line of credit in order to pay his property taxes. *Delpesche Decl.*, ¶ 26, and Ex. V. Accordingly, there was no conversion and Plaintiff did not suffer any damages. Therefore, the conversion claim should be dismissed.

**iii.    Hazard Insurance**

The Third Amended Complaint includes a few statements about his failure to pay hazard insurance. ¶¶ 30, 48 and 49. However, none of the causes of action against Defendant appear to relate to the multiple correspondence sent to Plaintiff requesting proof of payment of his hazard insurance premiums. To the extent Plaintiff's Third Amended Complaint read liberally could be interpreted to include allegations of misconduct by Defendant due to his repeated failure to timely pay his hazard insurance premiums, Defendant will address the chronology below.

11

On July 5, 2018, Liberty Mutual issued a bill to Plaintiff in the amount of $239.82 for his hazard insurance policy premium. (Dkt. 108). On August 6, 2018, Liberty Mutual issued a notice of non-payment. *Id.* On August 6, 2018, Liberty Mutual sent a Cancellation Notice to Champion relating to Plaintiff's homeowner's insurance policy. *Delpesche Decl.*, ¶ 14 Ex. K. The notice states that a copy of the notice was sent to Plaintiff for non-payment of premium. *Id.* On August 7, 2018, Liberty Mutual sent an e-mail to Plaintiff notifying him that his homeowner's insurance was at risk of cancellation due to non-payment. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 232, l. 24-25; p. 233, l. 2-5, l. 15-21, Ex. 40.) On August 8, 2018, Champion sent a letter to Plaintiff to request proof of hazard insurance. *Delpesche Decl.*, ¶ 15, Ex. L. On August 17, 2018, Plaintiff made a payment toward his hazard insurance in the amount of $239.82. See Policy Transaction Detail annexed to e-mail dated 8.7.18 (Dkt.108). On August 29, 2018, Champion sent a letter to Plaintiff requesting proof of hazard insurance. *Delpesche Decl.*, ¶ 16, Ex. M. On September 5, 2018, Liberty Mutual issued a bill to Plaintiff in the amount of $265.91 for his hazard insurance policy premium. (Dkt. 108); *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 248, l. 8-20; Ex. 22. On September 28, 2018, Champion sent a letter to Plaintiff to request proof of hazard insurance. *Delpesche Decl.*, ¶ 17, Ex. N. On October 1, 2018, Liberty Mutual charged a late payment fee. (Dkt. 108); *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 232, l. 24-25; p. 233, l. 2-5, l. 15-21; Ex. 20. On October 5, 2018, Plaintiff made a payment toward his hazard insurance in the amount of $265.91. (Dkt. 108); *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 232, l. 24-25; p. 233, l. 2-5, l. 15-21, *Vaughn Decl.*, Ex. 20.

On October 29, 2018, Champion acquired Lender Placed Insurance or Plaintiff in the amount of $2,789.00. *Delpesche Decl.*, ¶ 18, Ex. G. On November 2, 2018, Champion sent a letter to Plaintiff to request proof of hazard insurance. *Delpesche Decl.*, ¶ 19, Ex. O. On November 5,

12

2018, Liberty Mutual sent a Cancellation Notice to Champion relating to Plaintiff's homeowner's insurance policy. *Delpesche Decl.*, ¶ 20, Ex. P. The notice states that a copy of the notice was sent to Plaintiff for non-payment of premium. *Id.* On November 8, 2018, Liberty Mutual faxed a copy of a Declarations page to Plaintiff, which shows an annual premium in the amount of $2,583.00. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 244, l. 5-12; Ex. 21. Also, on November 8, 2018, Champion received a copy of the proof of insurance from Liberty Mutual and the Plaintiff's account was credited in the amount of $2,789.00 on November 15, 2018. *Delpesche Decl.*, ¶ 21, Exs. Q and R. On November 14, 2018, Champion sent a letter to Plaintiff advising him that a credit was applied to his account in the amount of $2,789.00. *Delpesche Decl.*, ¶ 23, Ex. S.

On September 5, 2019, Liberty Mutual sent a Cancellation Notice to Champion relating to Plaintiff's homeowner's insurance policy. *Delpesche Decl.*, ¶ 34, Ex. DD The notice states that a copy of the notice was sent to Plaintiff for non-payment of premium. *Id.*

On September 5, 2019, Liberty Mutual sent a Cancellation Notice to Plaintiff relating to Plaintiff's homeowner's insurance policy. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 248, l. 8-20; Ex. 22. On September 18, 2019, Champion sent a letter to Plaintiff in response to his letter dated September 2, 2019, to advise that it received a Cancellation Notice from Liberty Mutual and asked Plaintiff to pay his hazard insurance premium by September 25, 2019 and to send proof of the payment to Champion. *Delpesche Decl.*, ¶ 36, Ex. FF. On September 27, 2019, Champion sent a letter to Plaintiff to request proof of hazard insurance. *Delpesche Decl.*, ¶ 37, Ex. GG. On October 22, 2019, Champion sent a letter to Stephen Deely of the State of New York Department of Financial Services (NYS DFS) in response to inquiries made regarding the servicing of the Plaintiff's reverse mortgage. *Delpesche Decl.*, ¶ 42, Ex. LL. Included with the letter was a copy of the HUD guidelines, the Mortgage and the Home Equity Conversion Loan Agreement. *Id.*

On October 31, 2019, Champion sent another letter to Stephen Deely, which includes a timeline of dates and amounts when Champion reviewed Plaintiff's account and disbursed funds for taxes and insurance on Plaintiff's behalf. *Delpesche Decl.*, ¶ 44, Ex. AA. On February 5, 2020, Liberty Mutual sent a Cancellation Notice to Champion relating to Plaintiff's homeowner's insurance policy. *Delpesche Decl.*, ¶ 47, Ex. PP. The notice states that a copy of the notice was sent to Plaintiff for non-payment of premium. *Id.* On February 5, 2020, Liberty Mutual sent a Cancellation Notice to Plaintiff relating to Plaintiff's homeowner's insurance policy. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 254, l. 23-25, p. 255, l. 2-16; Ex. 23.

The foregoing further demonstrates a pattern by the Plaintiff of failing to fulfill his contractual obligation to timely pay his hazard insurance premiums. Plaintiff acknowledged that he occasionally made untimely payments if his social security check arrived after the date the hazard insurance premium was due. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 174, l. 25, p. 175, l. 2 – 20. Defendant sent multiple notices to the Plaintiff prior to securing forced placed hazard insurance coverage. After proof of insurance was provided, the forced placed hazard insurance coverage was removed, and the premium was refunded back to the Plaintiff's line of credit. Again, there was no conversion and Plaintiff did not suffer any damages. Therefore, the conversion claim should be dismissed.

### III.    PLAINTIFF'S CLAIM FOR GROSS NEGLIGENCE MUST BE DISMISSED BECAUSE DEFENDANT DOES NOT OWE A DUTY TO PLAINTIFF

Plaintiff's fourth cause of action sounds in gross negligence based upon Defendant's advancement of funds from the Plaintiff's line of credit. Plaintiff cites to Department of Financial Security Rule § 419.2 "Servicer duty of fair dealing" and claims Defendant withdrew funds from his line of credit without prior notice. *Vaughn Decl.*, Ex. 1, ¶¶ 84-90.

Under New York law, in order to support a claim for gross negligence, Plaintiff must establish four elements: "(1) the existence of a duty; (2) a breach of that duty; (3) injury as a result thereof; and (4) conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F.Supp.2d 480, 498 (S.D.N.Y. 2012) (*citing Farash v. Cont'l Airlines, Inc.*, 574 F.Supp.2d 356, 367-68 (S.D.N.Y. 2008)). Also, "the duty giving rise to a gross negligence claim must be independent of the duty arising from a contract." *Id.* "It is well settled under New York law that a lender is not in a fiduciary relationship with a borrower, and thus a lender does not owe a borrower any special duties." *Cardoso v. Wells Fargo Bank, N.A.*, No. 21-CV-8189, 2022 WL 4368109 at *4 (S.D.N.Y. Sept. 20, 2022)(*citing Miyamoto v. Bank of Am., N.A.*, No. 19-CV-445, 2020 WL 5577730 at *3 (E.D.N.Y. Sept. 17, 2020)).

First, the lack of duty owed by Defendant to Plaintiff is fatal to Plaintiff's negligence claim. Second, the Plaintiff's claim for gross negligence should be dismissed, because Plaintiff fails to allege or establish a duty that Defendant had to Plaintiff independent from its duty arising from the Note, Mortgage and Home Equity Conversion Loan Agreement. Third, even if the Plaintiff attempted to allege Defendant owed an independent duty as a result of New York State Department of Financial Security Rule § 419.2, the requirement for the servicer to give 30 calendar days' notice before advancing money from the line of credit was not applicable until June 15, 2020.[2] As explained in Point II above, the three disbursements for property taxes were made between February 2019 and August 2019. Regardless, multiple letters were sent to Plaintiff prior to advancing funds from his line of credit to pay his overdue property taxes. Fourth, when money was refunded by Dutchess County, it was promptly credited back to his account. As a result,

---

[2] Pursuant to § 419.14 Transition Period, there was a ninety (90) day transition period when mortgage servicers were not in violation of the new rules as long as they complied with Part 419 that was in effect.

Plaintiff did not suffer any damages. Fifth, Defendant's actions were entirely reasonable given Plaintiff's repeated failure to timely pay his property taxes, and there is no evidence that Defendant acted with reckless disregard of Plaintiff's rights or engaged in intentional wrongdoing. Therefore, the fourth cause of action sounding in gross negligence should be dismissed.

IV. **PLAINTIFF'S SIXTH AND ELEVENTH CAUSES OF ACTION FOR VIOLATION OF GBL § 349 MUST BE DISMISSED BECAUSE DEFENDANT'S ACTIONS WERE NOT MISLEADING AND PLAINTIFF DID NOT SUFFER ANY DAMAGES**

Plaintiff's sixth cause of action involves Plaintiff's claim that Defendant violated Section 349 of the New York General Business Law by failing to provide Plaintiff with a copy of the "Lender's Limited Waiver of the Right of Foreclosure" required by 3 NYCRR-NY 79.7(e). *Vaughn Decl.*, Ex. 1, ¶¶ 92-100. Plaintiff's eleventh cause of action alleges he received misleading correspondence from Defendant. *Id.*, ¶¶ 123-125.

In order to establish a prima facie case for a claim of deceptive trade practices pursuant to GBL § 349, a plaintiff must allege that (i) the defendant's deceptive acts were consumer oriented, (ii) the acts were misleading in a material way, and (iii) the plaintiff was injured as a result. *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp.3d 729, 781-783 (S.D.N.Y. 2018). "Consumer oriented" acts involve standard practices routinely applied to consumers as opposed to individual transactions. *Id.* (*citing N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 13-14 (2d Dept. 2012) (conduct is "consumer oriented" where it alleges conduct that has a broad impact on consumers at large). Materially misleading conduct is conduct "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* (*citing Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2nd Cir. 2015)). Plaintiff's allegations fail to meet the threshold required under GBL § 349.

16

First, and most importantly, 3 NYCRR 79, which was in effect on August 1, 2013, did not apply to the Plaintiff's reverse mortgage. Part 79.1(b) states, "[n]either this Part nor Parts 38, 39, 80 or 82 shall apply to any loan which conforms to the requirements of the Demonstration Program of Insurance of Home Equity Conversion Mortgages for Elderly Homeowners, also known as the 'HUD/HECM' reverse mortgage loan program, 12 USC § 1715z-20". *Vaughn Decl.*, Ex. 25. Plaintiff has HUD/HECM reverse mortgage. *Delpesche Decl.,* Ex. B. Plaintiff is aware that his has a HUD/HECM reverse mortgage.[3]   Therefore, when the Plaintiff's reverse mortgage originated on June 4, 2009, MetLife had no obligation to provide a "Lender's Limited Waiver of the Right of Foreclosure" as Plaintiff contends.

Pursuant to N.Y. Comp. Codes R. & Regs. Tit. 3 § 79.7(d),

> All lenders must prepare a form entitled "Lender's Limited Waiver of the Right of Foreclosure."  This document shall, clearly and conspicuously, identify every event, as provided for in this section that would give the mortgagee authority to terminate the loan, and shall be provided to and signed by the mortgagor at the closing of every loan.  The lender shall furnish a copy of the executed form to every mortgagor at closing and shall keep the original form on file for the life of the loan, and thereafter in accordance with applicable statutes.

Notably, Defendant did not originate the Plaintiff's reverse mortgage. The mortgage was originated by MetLife on June 4, 2009. *Delpesche Decl.*, Ex. B.  Thus, even if § 79.7(d) applied, Defendant did not violate § 79.7(d) by failing to include a copy of the Lender's Limited Waiver of the Right of Foreclosure among the closing documents.  Consequently, Defendant could not produce a Lender's Limited Waiver of the Right of Foreclosure upon Plaintiff's request.  In fact, Plaintiff concedes Defendant informed him there was no such document within the loan file.  Thus,

---

[3] See Plaintiff's "Tutorial on Reverse Mortgages" in the Third Amended Complaint, ¶ 14.

Defendant was not deceptive or misleading.  If indeed there was a violation of § 79.7(d), then Defendant is not the proper party.

Again, even if § 79.7(d) applied, Plaintiff has not produced any evidence that the omission of a Lender's Limited Waiver of the Right of Foreclosure from his loan origination documents was experienced by any other consumers.  Thus, the only reasonable conclusion based upon the record is that the omission is unique to his loan. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995) (Plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large.").  Furthermore, even if there was evidence of a pattern by MetLife of originating reverse mortgages and failing to include a Lender's Limited Waiver of the Right of Foreclosure, and that such acts had a broader impact on consumers at large, that claim should be directed toward MetLife, not Defendant.

Moreover, Plaintiff fails to both allege and establish that he sustained any damages as a result of the omission of a Lender's Limited Waiver of the Right of Foreclosure from his loan documents.  *Consumer Fin. Prot. Bureau*, 332 F. Supp.3d at 781-783; *Oswego*, 85 N.Y.2d at 26 (*holding* "a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm."). The document relates to the termination of reverse mortgage loans. Plaintiff's reverse mortgage was not terminated, was not foreclosed on, and is not in foreclosure.

Clearly, recognizing his inability to demonstrate damages, Plaintiff attempts merge his claim for conversion related to disbursement of funds from his line of credit to pay his overdue property taxes, to establish damages under GBL § 349. *Vaughn Decl.*, Ex. 1, ¶ 98. As explained in Point II above, Plaintiff had a history of not paying his property taxes on time, which led to the advancement of funds from his line of credit. Regardless, that is a dispute that is unique to the

parties and does not support a claim for damages under GBL § 349. Although Plaintiff does not identify which "notices" he is referring to, Defendant's letters dated December 19, 2018 and January 23, 2019, state that Plaintiff's failure to pay is property taxes "could result" in his loan being placed in default. *Delpesche Decl.*, Ex. T and U. They also state, "[i]f your loan is approved to be called due and payable, it could lead to foreclosure on your home, which we want to avoid." *Id.* Further, the letters "strongly encourage" Plaintiff to contact a HUD-approved housing counselor if he is experiencing financial difficulties paying his taxes. *Id.* There is no factual basis to support the allegation that his mortgage was declared in default.

Therefore, the sixth and eleventh causes of action under GBL § 349 should be dismissed.

## V. PLAINTIFF'S SEVENTH AND TENTH CAUSES OF ACTION FOR BREACH OF CONTRACT MUST BE DISMISSED

Plaintiff's seventh and tenth causes of action sound in breach of contract and are related. Plaintiff alleges Defendant overcharged interest on the loan. *Vaughn Decl.*, Ex. 1, ¶¶ 61-63, 101-105, and 121-122. Specifically, Plaintiff alleges that pursuant to the terms of the Note, interest was calculated at a rate two places to the right of the decimal point, but after origination, the interest rate was calculated to three points to the right of the decimal. *Id.*

First, the loan originated in 2009. To the extent Plaintiff alleges breach of contract dating back to 2009, most of his claim is barred by the six-year statute of limitations applicable to breach of contract claims. CPLR § 213(4). Second, Plaintiff misinterprets a letter from MetLife that was mailed to him on or about November 10, 2010. *Delpesche Decl.*, ¶ 10, Ex. F. The letter states, "the **date** for determining the index rate for adjustments to the interest rate was inaccurately described in Paragraph 5(B) of your Note". *Id.* It does not state that the method of calculating the interest rate was changed. *Id.* Also, Plaintiff's allegation regarding the interest rate fails to consider paragraph 5(D) of the Note which discloses that the monthly interest rate will never increase above

19

13.066% -- three digits to the right of decimal point. *Delpesche Decl.*, Ex. TT. Third, despite Plaintiff's claim to the contrary, the letter was mailed to him on November 10, 2010. *Delpesche Decl.*, Ex. G. Fourth, there is no dispute that Plaintiff receives monthly statements from the loan servicer.

In sum, MetLife notified Plaintiff of the revised language back in 2010 and he did not file this lawsuit until October 7, 2019. (Dkt. 2). Thus, any claim prior to October 7, 2013 is time barred. Substantively, there is no basis for a breach of contract claim against Defendant because Defendant has failed to provide any evidence that Defendant miscalculated the monthly interest rate on his loan. Therefore, the seventh and tenth causes of action should be dismissed.

## VI.    PLAINTIFF'S    CLAIMS    SEEKING    REFORMATION    AND EXTINGUISHMENT OF THE 2009 MORTGAGE ARE BARRED BY THE SIX-YEAR STATUTE OF LIMITATIONS

The 2009 mortgage contains Plaintiff's signature, and Plaintiff admits that he signed the 2009 Mortgage. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 105, l. 3-14, p. 111, l. 9-19; *Delpesche Decl.*, ¶ 4, Ex. B. Thus, the authenticity of Plaintiff's signature is not at issue. However, Plaintiff disputes the accuracy of the property description in the Schedule A in the 2009 Mortgage because it includes an "abandoned road". *Id.* Plaintiff contends that he did not own the portion of the property described as an "abandoned road" when the loan originated in 2009, but the same "abandoned road" was allegedly subsequently transferred to him. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 18, l. 2-18. Plaintiff also claims that it should have included language that allowed him to sell portions of his property. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 115, l. 24-25, p. 116, l. 2-5.

"[T]he law in New York is clear that the 'plaintiff's right to rescission or reformation, if any, accrued at the time of the execution of the agreement.'" *Campione v. Campione*, 942

F.Supp.2d 279, 284 (E.D.N.Y. 2013)(quoting *Saull v. Seplowe*, 32 Misc.2d 303 (Kings Cnty. 1961)).  A "cause of action seeking reformation of an instrument on the ground of mistake is governed by the six-year statute of limitations pursuant to CPLR § 213(6), which begins to run on the date the mistake was made." *Investors Savings Bank v. Cover*, 187 A.D.3d 868, 130 N.Y.S.3d 371, 372 (2d Dept. 2020); *Bank of NY Mellon v. Regalbuto*, 2021 WL 73827 **4 (Sup. Ct. Kings Cnty. January 5, 2021) (holding that judicial reformation of a deed due to mistake is barred by six-year statute of limitations).  In the instant case, the latest date that the mistake could have been made is the date on which the 2009 Mortgage was recorded in the Dutchess County Clerk's Office on July 13, 2009.  *Delpesche Decl.*, ¶ 4, Ex. B.  Therefore, Plaintiff needed to bring his claim for reformation by no later than July 13, 2015.  The reformation claim was raised for the first time in the Third Amended Complaint dated January 24, 2022.

"Generally speaking, an equitable cause of action for reformation involves changes to an already existing written contract in order to correct a previous mistake." *Campione*, 942 F. Supp. 2d at 284, *citing Fresh Del Monte Produce N.V. v. Eastbrook Caribe A.V.V.*, 44 A.D.3d 551, 553 (1st Dep't 2007) ("a claim for reformation must be based on either mutual mistake or fraudulently induced unilateral mistake").

In *Campione*, the District Court dismissed the plaintiff's claim for reformation on a 12(b)(6) motion as failing to state a claim because the claim was time-barred as having been interposed more than six years after the instrument sought to be reformed had been executed.  *Id.* at 285. The Court in *Campione* likewise dismissed the plaintiff's claim for a declaratory judgment that she was entitled to the benefits of the instrument as reformed.  The *Campione* Court "agree[d] with the [d]efendant that '[t]he third cause of action, for declaratory judgment, cannot be maintained because it parallels the other claims and merely seeks a declaration of the same rights

21

and obligations.'" *Id.*, *citing Sullo v. Margab Realty, LLC*, 20 Misc.3d 1117(A) (Table) (N.Y. Cnty. 2008). Similarly, the Court in this case should dismiss Plaintiff's claim to have the 2009 Mortgage extinguished pursuant to NY RPL § 329, because Plaintiff alleges as a basis for extinguishing the 2009 Mortgage the same grounds as those which he claims support reforming it. *Vaughn Decl.*, Ex. 1, ¶ 113.

Plaintiff admits that he signed the 2009 Mortgage. *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 105, l. 3-14, p. 111, l. 9-19. Plaintiff also admits that he did not ask the lender to change the Property description in Schedule A of the 2009 Mortgage to only include his house and five acres. *Id.*, at p. 115, l. 15-20. In addition, Plaintiff admits that he did not ask the lender's attorney to change the Property description in Schedule A of the 2009 Mortgage at the closing. *Id., at* p. 115, l. 21-23. Significantly, the property description contained in the 1982 Deed is the same in the 2007 Mortgage and in the 2009 Mortgage. *Delpesche Decl.*, Ex. A and B; *Vaughn Decl.*, Ex. 13, Rosendale EBT1, p. 34, l. 2 - 17; p. 103, l. 5-13; p. 115, l. 9-1; Ex. 15. In the event Plaintiff had a dispute with the Property description or any other contents of the 2009 Mortgage, he was required to bring his claim for reformation by no later than July 13, 2015. Thus, Plaintiff's claim to reform the terms of the 2009 Mortgage description fails as untimely.

The reformation claim under RPL § 329 should also be dismissed because the property description in the mortgage is identical to the one contained in previous descriptions of record. *Adam Plotch LLC v. World Savings Bank, FSB*, 15-CV-06162; 2018 WL 327247 at *6 (E.D.N.Y. Jan. 8, 2018) (holding that the property description in a mortgage was sufficient because it included a description in metes and bounds that was virtually identical to the one contained in prior descriptions of record.).

Plaintiff's claim that the 2009 Mortgage was not notarized at the time he signed it, also is without legal merit.  "That an acknowledgment or notarization may have been improperly taken -- or even not taken at all -- is insufficient to set aside a conveyance of land or affect its validity as to the grantor." *In re Broadway Equity Holdings LLC*, 617 B.R. 777, 792 (S.D.N.Y. Bankr. 2020) (enforcing mortgage against mortgagor where principals contested the authenticity and the notarization of their signatures but where the evidence established that they did sign the mortgage), *citing Strough v. Wilder*, 119 N.Y. 530, 535 (1890)(A conveyance of realty is effective to pass title as between the parties thereto, even though the deed be unacknowledged or improperly acknowledged); *Son Fong Lum v. Antonelli*, 102 A.D.2d 258, 262 (2d Dept. 1984)("Even had the acknowledgment been improperly taken, there would exist no basis for setting aside the conveyance."), *aff'd*, 64 N.Y.2d 1158 (1985); *Matter of Offerman*, 172 A.D.2d 838 (2d Dept. 1991)("That the deed was not properly acknowledged does not vitiate the validity of the transfer as between the grantor and grantee.").  Thus, even assuming that the notary was not present when Plaintiff admittedly signed the 2009 Mortgage, Plaintiff's signature on the 2009 Mortgage is effective.

Even if Plaintiff's claim under RPL § 329 was not untimely, Defendant is not the holder of the reverse mortgage and thus, is not the proper party from whom to seek reformation. The holder of the reverse mortgage is Mortgage Assets Management, LLC ("MAM"). *Delpesche Decl.*, ¶ 8. The subservicer is PHH Mortgage Services and the investor is FNMA. *Delpesche Decl.*, ¶¶ 9 and 13. Therefore, the claim should be dismissed for failure to join a necessary party. FRCP 19.

Due to the foregoing, the eighth cause of action for reformation or extinguishment of the mortgage should be dismissed.

## VII.    PLAINTIFF'S NINTH CAUSE OF ACTION FOR NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED

Plaintiff's ninth cause of action alleges negligent infliction of emotional distress and intentional infliction of emotional distress.  *Vaughn Decl.*, Ex. 1, ¶¶ 114-120.  In support of the claim for negligent infliction of emotional distress, Plaintiff contends that Defendant failed to properly train employees and was injured by their inaccurate responses to his inquiries related to his unpaid property taxes.  *Id.*, at ¶ 118.  In support of his intentional infliction of emotional distress claim, Plaintiff alleges Defendant intentionally withdrew money from his line of credit to pay his property taxes and hazard insurance in order to assert a "Type 52" claim on the MIP insurance.  *Id.*, at ¶ 119.

### i.    Negligent Infliction of Emotional Distress

In order to plead a claim for negligent infliction of emotional distress under New York law, a plaintiff must allege "(i) a breach of duty owed to plaintiff; (2) emotional harm; (3) a direct causal connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Cardoso* at *6 (*citing Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021)).   In order to satisfy the guarantee of genuineness of harm element, Plaintiff must demonstrate Defendant's actions had the "propensity to cause extreme emotional distress, 'such as mishandling of a corpse or the transmission of false information that a parent or child had died,' or the 'breach of the duty owed directly to the injured party must have at least endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her own physical safety'." *Id.*

As stated in Point III above, Defendant mortgage servicer, does not owe Plaintiff borrower a duty of care.  Also, the allegation that improperly trained employees gave inaccurate responses

to Plaintiff's inquiries related to his unpaid property taxes does not meet the threshold required to establish a claim for negligent infliction of emotional distress. Furthermore, the one phone call that Plaintiff allegedly had with Kauser Begum informing him there was no record of his paying 2018 and 2019 property taxes and as a result, his loan could be held in default, does not come close to mishandling a corpse, falsely claiming a parent or child had died, endangering Plaintiff's safety or cause Plaintiff to fear for his physical safety. *Vaughn Decl.*, Ex. 1, ¶ 45. Accordingly, the ninth cause of action for negligent infliction of emotional distress should be dismissed.

   **ii. Intentional Infliction of Emotional Distress**

   In New York, the tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and the injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (N.Y. 1993); *Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 Fed. Appx. 20, 22 (2d Cir. 2016)). "Extreme and outrageous conduct," in particular, has been defined as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Howell* at 122.

   As described in Point II and Point III above, multiple letters were sent to Plaintiff prior to advancing funds from his line of credit to pay his overdue property taxes. When money was refunded by Dutchess County, it was promptly credited back to his line of credit. As a result, Plaintiff did not suffer any damages. Defendant's actions were entirely reasonable given Plaintiff's repeated failure to pay his property taxes, and there is no evidence that Defendant acted with reckless disregard of Plaintiff's rights or engaged in intentional wrongdoing. Moreover, even if this Court accepts Plaintiff's allegation that Defendant intentionally advanced money from his

line of credit in order to make a Type 52 claim on the MIP insurance (and there is no evidence to support the allegation), that behavior is not sufficiently outrageous to meet the requirements of New York law. Accordingly, the ninth cause of action sounding in intentional infliction of emotional distress should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant Nationstar Mortgage LLC d/b/a Champion Mortgage respectfully requests an Order granting its Motion for Summary Judgment pursuant to Rule 56 in its entirety and dismissing the Third Amended Complaint with prejudice.

Dated: March 15, 2023

Respectfully submitted,

By: */s/ Anthony W. Vaughn, Jr.*
    Anthony W. Vaughn, Jr.
Law Office of Anthony W. Vaughn, Jr. LLC
300 Cadman Plaza West
One Pierrepont Plaza, 12th Floor
Brooklyn, New York 11201
Tel: (908) 300-5455
anthony@avaughnlaw.com

*Attorney for Nationstar Mortgage LLC d/b/a*
*Champion Mortgage*